UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-293-GWU

FINLEY GIBSON,                                                    PLAINTIFF,

VS.                            **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI).  The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Gibson

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Gibson

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Gibson

      whether objective medical evidence confirms the severity of the alleged
pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

      Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

      In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987).  Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Gibson

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Gibson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Gibson

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Finley Gibson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of lumbar sprain/strain, osteoarthritis of the right knee, a major depressive disorder and borderline intellectual functioning.  (Tr. 13).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Gibson retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 19-25).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether the plaintiff, a 43-year-old man who attended the ninth grade in special education and had only unskilled work experience (Tr. 228-9, 243), could perform any jobs if he were limited to sedentary level exertion with the option of sitting or standing every hour, and also had the following non-exertional impairments (Tr. 244).  He: (1) could only

7

Gibson

occasionally climb, stoop, crouch, or crawl; (2) could not climb heights and needed to avoid vibration; and (3) had a "limited but satisfactory" ability to deal with the public, use judgment, deal with work stresses, function independently, and carry out simple instructions.  (Tr. 244-5).  The VE responded that there were jobs that such a person could perform at the sedentary level, including small product assembler, small product inspector or tester, and general production worker, with a total of 1,550 jobs in Kentucky and 66,000 jobs nationally.  (Tr. 244).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability primarily due to back problems (Tr. 77), and at the administrative hearing described having surgery both on his lower back and his knee (Tr. 232-3).  He also described problems with his nerves, for which he had been receiving treatment at a Comprehensive Care Center (CCC), but he had stopped going because he had been walking to his appointments and was no longer able to "handle it."  (Tr. 234-5).  It was difficult for him to sit, stand or walk on concrete, or to climb stairs.  (Tr. 240, 242).

The plaintiff submitted some office notes from Dr. Bernard Moses, a family physician, and one of his associates, a Dr. Miller, who diagnosed both lumbar disc disease status post laminectomy and osteoarthritis of the knees (e.g., Tr. 217). These sources had access to an April, 2005 lumbosacral spine MRI showing disc

8

Gibson

degeneration and protrusion with heavy scarring (Tr. 202-3), but they did not give any functional restrictions.   The only examining source to provide physical restrictions was Dr. Robert Hoskins, who examined the plaintiff on one occasion in August, 2004, and did not have any records to review.  (Tr. 109-11).  Dr. Hoskins found evidence of previous lumbar surgery and noted limitations of motion in the lumbar spine and hips.  (Tr. 111,113-14).  Dr. Hoskins concluded that there was no clear evidence found to exclude occasional light carrying or lifting, or occasional slight bending, squatting, climbing, or balancing.  However, he felt that Mr. Gibson would likely have difficulty with heavy lifting, heavy labor, and frequent stooping, bending, squatting, and crawling on the basis of his previous spinal surgery and back pain.  (Tr. 112).

A state agency physician reviewed the record in December, 2004 and concluded that the plaintiff was capable of sedentary level work with standing and walking six hours in an eight-hour day, and sitting about six hours in an eight-hour day, but periodically needed to alternate sitting and standing "5 minutes every + hour," could "never" climb ladders, ropes, or scaffolds, could "occasionally" climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and needed to avoid all exposure to vibrations and hazards.  (Tr. 120-3).

The plaintiff challenges the ALJ's hypothetical limitations on appeal, noting that the ALJ stated in his decision that the plaintiff "requires the opportunity to

9

Gibson

alternately sit/stand for five minutes every hour." (Tr. 20). This finding was seemingly consistent with the restriction given by the state agency physician. (Tr. 120). While the court does not agree with counsel for the plaintiff that this would necessarily preclude all sedentary work, there is a potentially significant discrepancy between the restriction as given in the ALJ's decision, and supported by the state agency physician, and hypothetical question given at the hearing, which merely stated that there should be a "sit/stand option ever[y] hour." (Tr. 244). Moreover, the hypothetical question omitted any reference to occasional balancing, as found both by Dr. Hoskins and the state agency physician. Social Security Ruling 96-9p, while noting that while "postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work... because those activities are not usually required," it goes on to instruct that "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base [and i]t is important to state in the [residual functional capacity] assessment what is meant by limited balancing in order to determine the remaining occupational base...[c]onsultation with a vocational resource may be appropriate in some cases." Id. at 7. Given both of these discrepancies, a remand will be required in order to

obtain additional vocational testimony including both restrictions, particularly in light of the very low number of jobs already identified by the VE as being available.[1]

From a mental standpoint, Mr. Gibson underwent a consultative psychological examination by Dr. Blaine Pinaire in October, 2004.  Dr. Pinaire observed that the plaintiff appeared depressed and at one point became tearful, and appeared to be in pain.  (Tr. 115).  He was logical and coherent and could recite his Social Security number from memory, however.  (Tr. 115-16).  He described being made irritable by constant pain, as well as having only completed the ninth grade in special education.  (Tr. 116-17).  He was able to handle his own funds and take care of his personal needs, and had gotten along with others while employed, but avoided public contact.  (Tr. 117).  Dr. Pinaire opined that Mr. Gibson likely functioned in the range of borderline intellectual functioning, but did not think that his problems of irritability, anger, and frustration met criteria for a specific mood or anxiety disorder.  He also assigned a Global Assessment of Functioning (GAF) score of 54. (Id.).  A GAF score of 51-60 represents moderate symptoms.  Diagnostic and Statistical Manual of Mental Disorders (4th Edition-Text Revision) (DSM-IV-TR), p. 34. Nevertheless, Dr. Pinaire opined that Mr. Gibson appeared incapable of intellectually performing "any"

---

[1]Although there is no "magic number" which differentiates between what constitutes a significant and an insignificant number of jobs, Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988), the total of 1,550 statewide jobs compares unfavorably to the 1,350 to 1,810 jobs in a nine-county area found to be significant in Hall.

Gibson

tasks required in the workplace, and was thought to be unable to sustain attention to perform simple repetitive tasks or relate well with fellow workers and supervisors, primarily due to pain and irritability. (Tr. 117-18). He would also not be able to adapt and respond to pressures associated with many types of day-to-day work activity due to intellectual impairment, irritability, and pain. (Tr. 118).

A state agency psychologist, Dr. Mary Thompson, reviewed the evidence to this point and concluded that Dr. Pinaire could only be given partial weight because his objective findings suggested significant residual functional capacity. (Tr. 172). She concluded that the plaintiff would have a "moderately limited" ability to understand, remember, and carry out detailed instructions and interact appropriately with the general public. (Tr. 140-2).

Subsequently, the plaintiff sought treatment at the CCC, and in January, 2005, a source at CCC listed diagnostic impressions as including a severe recurrent major depressive disorder without psychotic features, a pain disorder with both medical and psychological factors, and a dependent personality disorder. His current GAF score was given as 50. (Tr. 190). A GAF score of 50 reflects serious impairment in social, occupational, or school functioning. DSM-IV-TR, p. 34. This assessment does not appear to have been signed, however. Treatment notes indicate that Roberta Tackett, a registered nurse practitioner, saw the plaintiff in February and March, 2005 and also diagnosed a major depressive disorder, but with

12

Gibson

a GAF of 55-60. (Tr. 176,179-80). She prescribed the medication Effexor, which the plaintiff indicated helped somewhat with sleep, although it upset his stomach. (Tr. 176). However, he apparently stopped treatment at CCC at approximately this point, as previously described. A letter regarding Mr. Gibson's condition dated March 30, 2005 was apparently written by William M. Keene, a licensed clinical social worker, and signed by the CCC staff psychiatrist, Dr. John Schremly. The letter described Mr. Gibson as having a "deteriorating mental condition," and, in addition to mentioning subjective complaints of depression, irritability, periodic suicidal ideation, and feelings of hopelessness and withdrawal, also mentioned some objective observations, such as staying out of the facility's waiting room and having "extreme difficulty completing basic tasks during therapy sessions." (Tr. 174). The diagnosis was repeated of recurrent severe major depressive disorder, pain disorder, and dependent personality disorder with the GAF of 50. (Id.). The letter concluded that Mr. Gibson was unable to work at any job. (Tr. 175).

The ALJ rejected the letter signed by Keene and Schremly, noting that Keene was not an acceptable medical source, and because, despite Dr. Schremly's signature, the CCC treatment records did not support limitations on performing basic tasks during therapy sessions. (Tr. 18). While there is some basis for this rejection, the plaintiff correctly points out that the ALJ did not mention in his decision that the plaintiff was also found to be depressed, mildly agitated, overactive, fidgety, anxious,

13

Gibson

irritable, as well as having difficulty sitting and at times "flinching" due to pain.  (Tr. 176-82).  Since the case is being remanded on other grounds, the defendant may wish to obtain testimony from a medical expert if the opinions of all the examining sources are to be rejected.  The plaintiff may also wish to take the opportunity to provide additional evidence.

The decision will be remanded for further consideration.

This the 25th day of April, 2007.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**

14